UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL-MAHDI F. MOHAMMED

       Plaintiff,                            Case No. 1:15-cv-413

     v.                                   Dlott, J.
                                        Bowman, M.J.

ZENITH LOGISTICS, INC.

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Al-Mahdi F. Mohammed brings this action, *pro se*, against defendant Zenith Logistics Inc. ("Zenith") alleging that defendant discriminated against him on the basis of race and religion. This matter is now before the Court on Defendant's motion for summary judgment (Doc. 15) and the parties' responsive memoranda and supporting documents. (Docs. 18, 20, 21). For the reasons set forth herein, the undersigned finds that Defendant's motion for summary judgment is well-taken and should be granted.

**I. Background and Facts**

*A. Plaintiff's Allegations*

Plaintiff's complaint alleges that Zenith discriminated against him in violation of 42 U.S.C. §2000e-2(a)(1). However, Plaintiff does not include any specific allegations of discrimination in his Complaint. (Doc. 3). The Charge of Discrimination attached to the Complaint alleges that Plaintiff is an African American male and a Muslim who previously filed a charge of discrimination against a Verst Group subsidiary in March 2015. Plaintiff was discharged from his assignment in April 2015. Plaintiff claims that

he was discharged because of his race and in retaliation for his prior EEOC complaint. Notably, the charge of discrimination identified Verst Group Logistics as Plaintiff's employer. According to Plaintiff, Verst Group and Zenith are purportedly the same companies because they have the same address, same employees, same attorneys and same C.E.O. Zenith disputes this assertion.

Zenith is an Ohio corporation that contracted with Kroger Limited Partnership I to operate a warehouse and distribution center located in Woodlawn, Ohio, to service Kroger stores in the Greater Cincinnati area. (Doc. 15, Ex. 2, Dec. Grau at ¶2). Zenith did not employ Plaintiff. (Doc. 15, Dec. Grau at ¶8; Ex. 3, Dec. of Joe Schultz at ¶5). Zenith directed the employees of Complete Personnel Logistics ("CPL"), including Plaintiff, to their job assignments each day. (Doc. 15, Ex. 3Dec. Schultz at ¶6). Zenith did not instruct CPL's employees on how to perform their job duties. (Doc. 15. Ex. 3, Dec. Schultz at ¶6).

Verst Group Logistics, Inc., ("Verst") is a separate corporation that is also an Ohio Corporation but is in the business of transportation and logistics. (Doc. 15, Ex. 3, Dec. Grau at ¶3). Verst has no involvement or relationship to the Kroger facility where Plaintiff worked. (Id. at ¶5)

B. *Plaintiff's Assignment with Zenith*

Complete Personnel Logistics is an employment agency that recruits and supplies drivers to Zenith. (Doc. 15, Dec. Schultz at ¶2; Dec. Grau at ¶6). Plaintiff is a former employee of CPL. (Dec. Schultz at ¶4). CPL hired Plaintiff as a truck driver in July, 2012. (Doc, 15, Ex. 4, Deposition of Plaintiff at pp. 17- 19). CPL assigned Plaintiff

to work at Zenith to deliver dry groceries to Kroger stores in the Greater Cincinnati area. (Id. at 22).

In August of 2012, Plaintiff was re-assigned to work as a yardman at Zenith. (Doc. 15, Ex. Dep. Plaintiff at 25; Ex. 3, Dec. Schultz at ¶7). His primary duty as a yardman involved moving trailers at the Zenith facility. (Dep. Plaintiff at 25-26).

During Plaintiff's assignment at Zenith, he was the subject of frequent complaints. (Doc. 15, Ex. 3, Dec. Schultz at ¶9). Both CPL and Zenith employees complained about Plaintiff's poor work performance and his inability to get along with others. (Doc. 15, Ex. 3, Dec. Schultz at ¶9).

Notably, on October 25, 2012, a confrontation occurred between Plaintiff and Demian Steinmann ("Steinmann"), a Zenith employee who supervised the yard. (Doc. 15, Ex. 4, Dep. Plaintiff at 72-73). Plaintiff was sitting in a truck taking a smoke break. Steinmann approached him and told him that he needed to clock out if he was going to take a smoke break. Plaintiff argued with Steinmann as to whether it was necessary for him to clock out. Following a brief argument over the issue, Steinmann allegedly told Plaintiff that he did not like him. (Id at 73). Plaintiff responded to Steinmann, "I don't like you either, mother fucker." (Id.). As a result of this confrontation, Plaintiff was sent home from work. (Id. at 74).

Another incident occurred December 29, 2012, involving a physical confrontation between Plaintiff and a driver for U.S. Xpress. (Doc. 15, Ex. 4, Dep. Plaintiff at 96-98). Plaintiff confronted the driver over the location of where the driver had parked his truck in the yard. The driver accused Plaintiff of making physical contact with him. Plaintiff indicates he merely grabbed the driver's arm to get his attention. (Id. at 96-98). The

police were called and responded to the incident. (Id. at Plaintiff at 96-98; at Ex. 4). These incidents, together with the other complaints and problems regarding Plaintiff's inability to work and get along with his fellow workers and supervisors lead Zenith to request CPL to reassign Plaintiff and to assign a new driver to replace him. (Doc. 15, Ex. 3, Dec. Schultz at ¶¶9-11). On February 22, 2013, CPL informed Plaintiff that Zenith no longer needed his services. (Doc. 15, Ex. 4, Dep. Plaintiff at Ex. 7). Following his removal from Zenith, CPL offered to reassign Plaintiff to another job location, but he declined. (Doc. 15, Ex. 4, Dep. Plaintiff at 151-155; Dep. Plaintiff at Ex. 7, Ex. 8 and Ex. 9).

*4. Plaintiff's Allegations of Discrimination*

Plaintiff alleges the other CPL employees made anti-Muslim remarks about him when he was first transferred to the yard at Zenith in August of 2012. (Doc. 15, Ex. 4, Dep. Plaintiff at 25, 58-62, 64-65). These remarks allegedly included comments by CPL employees that they didn't want to work with a Muslim, that they hoped Plaintiff could speak English and was not a 'rag head,' as well as jokes about the Prophet Mohammed. (Doc. 15, Ex. 4, Dep. Plaintiff at 58-62). Plaintiff admits that these CPL employees ceased making the alleged discriminatory remarks soon after he was reassigned to the salvage yard and that they did not make these discriminatory remarks again. (Doc. 15, Ex. 4, Dep. Plaintiff at 64). Plaintiff admits that Zenith employees did not make anti-Muslim comments to him. *Id.*

Plaintiff also alleges that CPL employees subjected him to anti-Muslim actions after he was reassigned to work in the yard. (Id. at 64-66). Plaintiff described these

actions as including CPL employees hiding trailers from him and not responding to him on the radio. (*Id.* 65, 67).

Plaintiff asserts that Zenith requested his termination because he was unfairly identified as being confrontational and argumentative. (*Id.* at 124). Plaintiff alleges that the reason he was removed from his work assignment at Zenith was because the CPL employees he worked with in the yard did not want to work with him due to him being a Muslim. (Id. at 128-129).

Zenith now moves for summary judgment, asserting that based on the evidence of record and applicable federal law, there are no genuine issue of material fact and Zenith is entitled to judgment as a matter of law. The undersigned agrees.

**II. Analysis**

**A. Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

5

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587 (citation omitted).  It is the Plaintiff's burden to point out record evidence to support his claims.  "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin*

6

*County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Defendant's Motion for Summary Judgment

As detailed above, Plaintiff's complaint alleges that Defendant discriminated and retaliated against him based on his race and religion in violation of Federal law. Zenith however, contends that Plaintiff's complaint should be dismissed because the Charge of Discrimination attached to the Complaint identifies the wrong employer. Zenith further asserts that Plaintiff cannot establish a *prima facie* case of disability discrimination, because he cannot show that he suffered and adverse action and was otherwise qualified for his position. Assuming arguendo, that Plaintiff can establish a *prima facie* case of discrimination, Zenith asserts that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment and Plaintiff cannot show that GPI's proffered reason for his termination is a pretext for discrimination. Plaintiff, however, claims that he is able to establish that he was terminated because of his race and/or religion

### C. Zenith is entitled to Judgment as a Matter of law

*1. Plaintiff's Charge of discrimination*

As noted above, Plaintiff's complaint names only names Zenith as the Defendant in the case, the Charge of Discrimination attached to the Complaint identifies Plaintiff's employer as "Verst Group Logistics." (Doc. 3, PageID 21). Verst Group Logistics and Zenith are separate business entities. (Doc. 15, Ex. 2, Declaration of Rich Grau at ¶4). Pursuant to 42 U.S.C. 2000-e-5(f)(1), suit may only be brought against the respondent "named in the charge" of unlawful employment practice filed with the Ohio Civil Rights Commission and/or the Equal Employment Opportunity Commission. Because Zenith

7

was not identified in the charge of discrimination and was not Plaintiff's employer, Zenith asserts that that it is entitled to judgment as a matter of law

Plaintiff contends however, that the distinction between Zenith and Verst Group Logistics is immaterial because the entities share the same address, employees, and legal counsel. Plaintiff's contention is unsupported by any evidence or caselaw and is therefore not well-taken.

In any event, in the alternative, the undersigned will address the merits of Plaintiff's claims and Zenith's motions relating to Plaintiff's claims of discrimination.

   *2. Discrimination*

Title VII makes it unlawful for an employer to discharge an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e–2(a) (1). The standards for establishing a discrimination claim under Title VII are equally applicable to plaintiff's claims under Ohio Rev.Code § 4112. *See Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 n. 2 (6th Cir.2000); *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992).

An employee may base his claim of employment discrimination on a theory of disparate impact or disparate treatment or both. *Lynch v. Freeman,* 817 F.2d 380, 382 (6th Cir.1987). In the instant case, Plaintiff is purportedly proceeding under the disparate treatment theory of discrimination. Under the disparate treatment theory, the plaintiff must show that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin. Unlike the disparate impact theory, proof of discriminatory motive is critical in the case of disparate

treatment. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 92 (6th Cir.1982) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Claims of disparate treatment are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir.2002); *Mitchell,* 964 F.2d at 582. The *McDonnell Douglas* burden-shifting analysis requires that plaintiff first establish a *prima facie* case of discrimination. *Id.*

A plaintiff may establish a *prima facie* discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 363 (6th Cir.2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir.2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact-finder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie* case of race discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. See *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir.2002).

The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804. Here, Plaintiff has not provided any evidence to satisfy the second and/or fourth prongs of a *prima facie* case of race discrimination.

Notably, with respect to the second prong, to demonstrate that he was qualified, Plaintiff "must prove that he was performing his job at a level which met his employer's legitimate expectations." *Meadows v. Ford Motor Co.,* 21 F. App'x 302, 304 (6th Cir.2001) (citations omitted). *See Powell v. Syracuse Univ.,* 580 F.2d 1150, 1155 (2d Cir.) (to demonstrate that he was qualified for the job, a plaintiff must show that he was qualified for the position at the time of the discharge, regardless of whether he had performed the position satisfactorily in the past).

Here, aside from being a member of a protected class, Plaintiff has not established the remaining elements of a *prima facie* case of discrimination. Notably, Plaintiff was employed by CPL not Zenith. (Doc. 15, Ex. 3, Dec. Grau at ¶¶7-8; Dec. Schultz at ¶¶4-5). More importantly, neither Zenith, nor CPL subjected Plaintiff to an adverse employment decision. Neither CPL nor Zenith terminated Plaintiff. CPL reassigned Plaintiff from Zenith. (Doc. 15, Ex. Dec. Schultz at ¶3). Following CPL's removal of Plaintiff from his assignment at Zenith, CPL offered to reassign him to jobs with other companies, but he declined the reassignments. (Doc. 15, Ex. 4, Dep. Plaintiff

10

at 151-155; Dep. Plaintiff at Ex. 7, Ex. 8 and Ex. 9).

Reassignments do not constitute adverse employment actions without disadvantageous changes in hours or salary. *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir.1996) (*citing Yates v. Avco Corporation,* 819 F.2d 630, 638 (6th Cir.1987)). More generally, courts look for at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities. *Id. (citing Crady v. Liberty National Bank & Trust Company,* 993 F.2d 132, 136 (7th Cir.1993)).

Furthermore, Plaintiff has failed to show that he was qualified for his position. As detailed above, Zenith received frequent complaints about Plaintiff's poor work performance and his inability to get along with his co-workers. (Doc. 15, Ex. 3, Dec. Schultz at ¶9). The two confrontations described above, coupled with the frequent complaints about Plaintiff lead Zenith to decide to request that CPL reassign him from the yard. (*Id*. at ¶11).

Assuming, *arguendo,* that Plaintiff has come forward with sufficient evidence to establish a prima facie case of race and/or religious discrimination, Defendant has articulated a legitimate, non-discriminatory reason for the decision to reassign Plaintiff, *i.e.* his poor performance and inability to get along with his co-workers, and Plaintiff has failed to provide any evidence of pretext.

11

### III. Conclusion

For these reasons, the Court hereby **RECOMMENDS** that the Defendant's motion for summary judgment (Doc. 15) be **GRANTED,** all pending motions be **DENIED as MOOT** (Docs. 23, 25) and this matter be **TERMINATED** on the active docket of the Court.

                                              *s/ Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL-MAHDI F. MOHAMMED

    Plaintiff,

v.

ZENITH LOGISTICS, INC.

    Defendant.

Case No. 1:15-cv-413

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).